**BINFORD, Sheriff, v. HARRIS COUNTY
et al. (No. 8613.)***

(Court of Civil Appeals of Texas. Galveston.
April 1, 1924. Rehearings Denied
April 10, 1924.)

**1. Statutes ⬠158—Repeals by implication not favored.**

Repeals by implication are not favored.

**2. Sheriffs and constables ⬠29—Act for payment of guard and matrons in jails held not repealed by act as to compensation for care of prisoners.**

Code Cr. Proc. 1911, art. 1142, as amended by Acts 38th Leg. (1923), c. 181, as to sheriff's compensation for care of prisoners, did not repeal article 1143, providing for payment of guards and matrons in jails, so as to render amount received for their hire a fee of office, for which sheriff must account.

**3. Sheriffs and constables ⬠71—Amount received for safe-keeping prisoners held not accountable fee of office.**

Amount payable to sheriff for safe-keeping prisoners under Code Cr. Proc. 1911, art. 1142, subd. 1, as amended by Acts 38th Leg. (1923), c. 181, separating sheriff's allowance for safe-keeping from that for support and maintenance of prisoners, and requiring that net profit from latter be reported as fee of office, *held* not fee to be accounted for by sheriff; principle of exclusion applying.

**4. Courts ⬠91(1)—Decision of Court of Civil Appeals, approved by Supreme Court, law of state until changed.**

Decision of Court of Civil Appeals, with writ of error refused by Supreme Court, is law of state until changed.

**5. Sheriffs and constables ⬠71—Fees for commitment and release and profit from support of federal prisoners held accountable fees of office.**

Sheriff's fees for commitment and release of federal prisoners, together with profit from their support and maintenance, under Rev. St. arts. 5112, 5113, at scale provided in Code Cr. Proc. 1911, art. 1142, subd. 2, as amended by Acts 38th Leg. (1923), c. 181, *held* accountable fees of office.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by T. A. Binford, Sheriff, against Harris County and others. From judgment rendered, both parties appeal. Affirmed in part, and reversed and rendered in part.

Amerman & Sears, of Houston, for plaintiff.

Andrews, Streetman, Logue & Mobley, of Houston, for defendants.

GRAVES, J. Grounding his claim on article 1143 of our Code of Criminal Procedure, Binford, as sheriff thereof, sued Harris county for reimbursement for an aggregate of $1,308.75 paid out by him in December, 1923,

and January, 1924, for guards and matrons necessarily employed in the safe-keeping of prisoners confined in the jail of the county, alleging that allowance therefor had been in due time and manner made by the commissioners' court, but that the auditor for the county had refused to approve them because of an opinion of the Attorney General of the state to the effect that this article 1143 had been repealed by article 1142 of the same Code, as amended in 1923 by the Thirty-Eighth Legislature (Acts 38th Leg. [1923] c. 181).

In answer the county admitted that the sheriff had paid out for the purposes stated the amount he so claimed, and that it had refused to reimburse him, but denied being legally liable to him for any part thereof. By counterclaim against him it further charged, however, that he was liable to and owed it—over and above an annual maximum of $5,000 he was entitled to receive and retain—under the following claims:

(1) On account of its having paid the sheriff $200 for safe-keep of prisoners for one month in 1923, which the county claimed should be accounted for as fees of office under article 1142, Code of Criminal Procedure, as amended at the regular session of the Thirty-Eighth Legislature in 1923.

(2) That the sheriff was required to account as a fee of office for the profit made by him on account of the support and maintenance of federal prisoners, and the fees received by him on account of such prisoners.

The cause was heard on an agreed statement of facts, which, with the omission of purely formal recitations, and such matters as have become immaterial upon appeal, was as follows:

"(2) As such sheriff, said T. A. Binford employed at the county jail of Harris county, Tex., guards and a matron during the last half of December, 1923, and the month of January, 1924, and paid therefor during the last half of December, 1923, $420, and for the month of January, 1924, $888.75, as alleged in plaintiff's petition and the exhibit attached thereto. Accounts therefor were properly presented to the auditor of Harris county, Tex., in order that the same might be approved and paid by the county commissioners' court of said county. The auditor of Harris county declined to approve said accounts, because of the ruling of the Attorney General of the state of Texas to the effect that the amendment of article 1142 of the Revised Statutes of the state of Texas, which went into effect on or about June 12, 1923, repealed article 1143 theretofore in effect, which provided for the payment of said guards. Proper application for the appointment of said guards was made by the plaintiff, and plaintiff was entitled to be paid therefor, unless said article 1143 of the Code of Criminal Procedure was repealed by the amendment to article 1142, as held by the Attorney General.

"(3) On December 26, 1923, the sheriff, hav-

ing presented his account and claim therefor, and same having been duly allowed, was paid the sum of $200 for safe-keep of prisoners confined by him in the county jail of Harris county, in accordance with the provision of article 1142, Code of Criminal Procedure, as amended by the Acts of the Legislature of the State of Texas, Regular Session 1923, p. 405. The said sheriff has failed to account for said $200 so paid to him as fees of office, contending that the same did not constitute fees of office, and that he is not required to account for the same as such, it being the claim of the county in this case that such amounts so paid for safe-keep of prisoners constitute fees of office for which plaintiff is required to account.

"(4) During the fiscal year ending December 31, 1923, plaintiff received the following items from sources other than the county of Harris for the safe-keep, support, and maintenance of prisoners confined in the Harris county jail; * * * that during said year he received from the United States government or the officers thereof for the safe-keep, support, and maintenance of federal prisoners confined in said jail amounts as follows:

June, 1923......................................... $571 20
November ...................................... 382 40
                                                  _____
                                                  $953 60

"The sheriff has not included said profit in the amounts accounted for as fees of office, claiming that the same is not a fee of office for which he is required to account. The county claims that such profit is a fee of office for which the sheriff is required to account under the fee bill. * * *

"(6) At no time did the county allow any amounts to the sheriff upon his bills required by article 1148, C. C. P., for federal prisoners, and all payments were made direct to the sheriff by * * * the United States marshal.

"(7) That during 1923 the sheriff received * * * as fees for the federal prisoners (in addition to the 45 cents per day for their subsistence), the sum of $1 for each prisoner received, and $1 for each prisoner discharged, amounting in all to $185, which is included in the totals of $751.20 and $382.40.

"(8) That the sheriff for the fiscal year 1923 earned and collected the maximum provided by law."

On these facts the district court decided: (I) That article 1142 of the Code of Criminal Procedure, as amended by Acts Regular Session 1923, p. 405, did not repeal article 1143 theretofore in effect, providing for payment of guards and matrons in jails, and accordingly rendered judgment for appellant for the amount claimed on that account; (2) that the amount payable to the sheriff for safe-keep of prisoners under the first clause of article 1142, Code of Criminal Procedure, as amended by Acts Regular Session 1923, p. 405, is a fee of office, and the $200 received by the sheriff on that account should be accounted for by him as such fee of office; (3) that the jail fees, that is, the $1 charges for their commitment and release, aggregating $185, together with the profit realized from the support and maintenance of federal prisoners confined in jail, amounting to $272.72, making a total of $457.72, constitute fees of office, and should be accounted for as such.

Judgment having been rendered accordingly, both parties have appealed.

This court holds as follows: (1) It affirms the determination that article 1142 of the Code of Criminal Procedure as amended by the Thirty-Eighth Legislature in 1923 did not repeal pre-existing article 1143 of the same Code, and that the amount received by the sheriff for guard and matron hire at the jail was not a fee of office for which he was required to account; (2) it affirms the holding that the sums received on account of federal prisoners were fees of office, and had to be accounted for as such; (3) it reverses the holding that the amount payable to the sheriff for the safe-keep of prisoners under the first subdivision of article 1142 of the Code of Criminal Procedure, as amended by the Thirty-Eighth Legislature in 1923 was a fee of office to be accounted for.

[1, 2] There is no express intimation even in this amended article 1142 that its purpose was to in any way supersede or take the place of old article 1143; to read such an intent into it, therefore, resort must be had to implication; but it is a well known and universally followed rule that repeals by implication are not at all favored. Curtin v. Harris County (Tex. Civ. App.) 203 S. W. 455; Cole v. State, 106 Tex. 472, 170 S. W. 1036; Sutherland on Statutory Construction, par. 138.

Moreover, there is neither unavoidable inconsistency nor necessary repugnance between the two statutes, since clearly the sheriff could be allowed to have guards and matrons at the jail on one basis, and at the same time be compensated on a different one for the care of prisoners.

Another indication that these statutes were not intended to impinge upon each other is the fact that for many years prior to 1923 they coexisted alongside each other, the one carrying an allowance for guards, the other one for "the safe-keeping, support and maintenance" of prisoners as one undivided item, and that in that year the Legislature merely separated this latter provision into two, the first for "safe-keep," and the second for "support and maintenance"; just why this insignificant change should be given the effect of wiping out entirely the long-standing statute authorizing guards and matrons does not readily occur.

[3, 4] As concerns the $200 item received by the sheriff for the safe-keep of prisoners, we think another rule of construction applicable to amended article 1142, and that it bears in the opposite direction from the view taken by the trial court: For the first time in the history of the legislation on the subject, and evidently in direct response to this court's holding in the Hammond Case (Harris County v. Hammond [Tex. Civ. App.]

203 S. W. 445), the law-making body, to state the matter in the language of appellant's brief, "separated the allowance to the sheriff for the 'safe-keeping, support and maintenance of prisoners,' into two sections: (1) For the safe-keep of each prisoner for each day the. sum of 15 cents, not to exceed the sum of $200 per month; (2) for the support and maintenance of each prisoner, etc. The act then requires the sheriff to make his report of the net profits for the support and maintenance of each prisoner practically as heretofore, declaring that the difference between 'such expenditures and the amount allowed by the commissioners' court shall be deemed to constitute net profits,' and be reported as a fee of office. It will thus be seen that the Legislature, with the Hammond Case in mind, and with the law as it then stood, under which the sheriff received an allowance of so much per day for the safe-keeping, support, and maintenance of prisoners, saw fit to separate the item of 'safe-keep,' and to allow an extra 15 cents per day for each prisoner, not to exceed $200 per month."

In other words, we think the principle of exclusion applies, and that the Legislature, in thus separately classifying these items, and providing specifically only that the net profit from "the support and maintenance" of prisoners should be reported as a fee of office, which had not hitherto been so under the Hammond decision, meant thereby to exclude from the requirement the other item not so mentioned, the 15 cents per day charge for safe-keep, and so intended that—up to the $200 limit—it should be retained by the sheriff as an extra allowance for which he was not required to account under the fee bill.

The Hammond decision, rendered in 1918 by this court, with writ of error refused by the Supreme Court on January 16, 1919, and hence the law of the state until changed, had declared that no one of the "charges" allowed the sheriff for the "safe-keeping, support and maintenance" of prisoners was a fee of office subject to be accounted for, but that each was merely a perquisite or incidental benefit he was expected to keep for his own; when therefore in 1923 following there was thus singled out the item for "support and maintenance" disassociating it from the other one for "safe-keep," and specially providing that it should no longer be a mere perquisite, but must henceforth be treated as a fee of office, it seems to us a deliberate purpose was thereby indicated to leave the other one as it was before.

[5] The status of the account affecting federal prisoners is not free, from doubt, but, as above recited, we conclude that the sums so adjudged were correctly held to be fees of office, and as such subject to accounting by the sheriff. As we understand the trial court's judgment for $457.72 on this feature

in favor of the county, $185 of it was for commitment and release, or turnkey fees, with reference to these prisoners at $1 apiece for each service, and the balance of $272.72 was the sheriff's profit on account of their support and maintenance, none of it therefore being for "safe-keep" under subdivision 1 of amended article 1142, Code of Criminal Procedure. Under other articles of that Code, these $1 commitment and release, or turnkey fees, are definite and fixed charges for specific services the sheriff is required to perform as official duties, and no reason occurs for not holding them regularly subject to the general fee bill; indeed, it does not appear that appellant contends otherwise as to them.

Our conclusion that the other item, that representing the net profit from the feeding of these prisoners, should also be regarded as a fee of office rests mainly upon these considerations. The handling of such prisoners by and the compensation therefor to sheriffs is regulated by our Revised Civil Statutes, articles 5112 and 5113; the first of these requires the sheriff to receive and keep in the county jail all prisoners tendered to him by the United States marshal, the second one makes the marshal directly and personally liable to the sheriff for the jail fees and other expenses of keeping the prisoners, and concludes with this declaration: "Such fees and expenses to be estimated according to the laws regulating the same in other cases."

We agree with the county's contention that article 1142 of the Criminal Procedure in its present amended form rather than as it ran at the time article 5113 was passed, should be read into this provision and be taken as fixing the basis for what the sheriff is both to receive and keep, and, when that is done, the profit from boarding federal prisoners expressly becomes an accountable fee of office, just as that from the board of others generally does under subdivision 2 of this, criminal statute.

The view that the quoted clause from article 5113 should be held applicable to the changes made from time to time in the laws regulating such fees in other cases seems to be supported, not only by the history and text of the statute itself, from its inception in the act of August 30, 1856 (chapter 161, 4 Gammel's Laws, p. 506), but also by the decision of the Supreme Court on what appears to be an analogous situation in Fischer v. Simon, 95 Tex. 234, 66 S. W. 447, 882. In other words, the sustained purpose throughout the course of the legislation on the subject, though couched at times in slightly different language, appears to have been to have the sheriff's charge at any particular time for feeding federal prisoners determined upon the same basis as that provided by laws then in force for his compensation for so caring for any other prisoners; that being true, we are led to remark at this point

that there appears to us no authority for having charged the sheriff with 45 cents per prisoner for the support and maintenance of federal prisoners, as the agreed facts here show was done, notwithstanding any contract he may have had with the United States marshal to that effect, and only 40 cents each for a like service to county prisoners; the scale now provided in subdivision 2 of article 1142, Code of Criminal Procedure, should have been applied to both alike.

We think furthermore that this concluding provision in article 5113 differentiates our law upon this subject from that of Montana, and therefore that the decision of the Supreme Court of that state in Majors v. Lewis and Clark County, 60 Mont. 608, 201 Pac. 268, upon which appellant relies in this connection, if it can be said to determine the same question as is here involved, cannot be accepted as authoritative with us.

But, independently of the conclusion that present articles 5113 of the Civil and 1142 of the Criminal Procedure Codes should be regarded as thus correlative and interdependent, for the purpose of determining the sheriff's ultimate compensation in this particular, the latter statute, standing alone, we think, settles the matter in accord with the view we have taken; there is no hint therein of any distinction being intended on account of the source from whence the sheriff receives the prisoners, and, it being a general law on the subject, dealing with the support and maintenance of "prisoners confined in jail or under guard," without limitation to any one class, it seems more reasonable to conclude that all prisoners in the sheriff's hands were meant.

What has been said disposes of the assignments of error of both parties, appellant's No. 1 being sustained and his No. 2, as well as the single one presented by the appellee, being overruled; this court's judgment has accordingly been entered affirming in part and in part reversing and rendering the trial court's judgment, as hereinbefore indicated.

Affirmed in part.

Reversed and rendered in part.